UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

TACTICAL INFRASTRUCTURE S.A.,

                Plaintiff,

     - against -

APEX ENERGY ALTERNATIVE RESOURCES,
INC., ET AL.,

              Defendants.
────────────────────────────────────

           24-cv-2307 (JGK)

           <u>MEMORANDUM OPINION</u>
           <u>& ORDER</u>

JOHN G. KOELTL, District Judge:

    The plaintiff, Tactical Infrastructure S.A. ("Tactical"),
brought this action against the defendants, Apex Energy
Alternative Resources, Inc. ("Apex") and Robert S. Willoughby,
asserting claims for breach of contract and fraud. Willoughby
now moves to dismiss the Amended Complaint pursuant to Federal
Rule of Civil Procedure 12(b)(6). For the reasons set forth
below, the motion is **denied**.

I.

    Unless otherwise noted, the following facts are drawn from
the Amended Complaint and are assumed to be true for the
purposes of this motion to dismiss.

    The plaintiff, Tactical, is an investment company organized
under the laws of Panama, with its principal place of business
in Panama City. Am. Compl. ¶ 2, ECF No. 32. Tactical invests
internationally in areas including real estate and corporate
finance. Id. ¶ 7.

Apex, one of the defendants, is a Delaware corporation that maintained a principal place of business at 600 Third Avenue, New York, New York, during the relevant time period and, upon information and belief, currently maintains an office at 30 Park Avenue, Mount Vernon, New York. Id. ¶ 3. Apex holds itself out as an importer and exporter of crude oil and petroleum products. Id. Willoughby, the other defendant, is the President and sole shareholder of Apex and resides in New York. Id. ¶ 4. During the relevant time period, Willoughby allegedly maintained a business address at 600 Third Avenue, New York, New York. Id.

In November 2022, Tactical was referred to Pomerantz LLP ("Pomerantz"), a New York-based law firm, regarding a potential securities litigation matter. Id. ¶ 8. Tactical was introduced to Willoughby, and Tactical allegedly was led to believe that Willoughby was a partner with Pomerantz. Id. Over the following weeks, Willoughby communicated with Tactical regarding the litigation matter but expressed skepticism about its merits. Id. Prior to a scheduled meeting in December 2022, Willoughby allegedly suggested that "they" (a term Tactical understood to mean Pomerantz) were involved in commodities transactions that would present a superior investment opportunity for Tactical than the potential securities litigation matter. Id. ¶ 9.

On December 14, 2022, Tactical met with Willoughby at the Pomerantz offices in New York. Id. ¶ 10. Prior to the meeting,

Willoughby allegedly sent an email to Tactical describing opportunities to invest in commodities transactions—such as purchasing fuel in Rotterdam at $68 per barrel and reselling it at $100 per barrel—with attachments purporting to show purchase orders, invoices, delivery schedules, and storage receipts. Id.

Tactical alleges that, at the meeting, Willoughby provided Tactical with a brochure describing Apex's global operations and commodities trading activities, including chartering tankers and moving petroleum products worldwide. Id. ¶ 11. Willoughby advised Tactical not to pursue the securities litigation, claiming that Tactical would incur over $500,000 in legal fees and was unlikely to succeed. Id. ¶ 12. Instead, Willoughby allegedly promoted an opportunity to invest in a commodities transaction involving the short-term storage and resale of petroleum products. Id. ¶¶ 13, 16.

Willoughby showed Tactical a website for Apex, now allegedly defunct, which portrayed Apex as a global operation with over 100 employees and affiliates in twelve countries. Id. ¶ 14. According to Tactical, Willoughby represented that Tactical could earn "multiples" on its investment in a short period of time and led Tactical to believe that Pomerantz was involved in these transactions. Id. ¶ 15.

Willoughby proposed that Tactical invest $500,000 to cover storage fees for a transaction involving the purchase of a

petroleum product at $68 per metric ton and its resale at $100 per metric ton (the "December 2022 transaction"). Id. ¶ 16. Relying on Willoughby's representations, Tactical invested $500,000, documented by a Non-Negotiable Promissory Note dated December 15, 2022 (the "Note"), which Willoughby provided on behalf of Apex. Id. ¶ 17. The Note was signed by "Robert Willoughby, President" of Apex. ECF No. 33 at 4. The Note provided for 10% annual interest, monthly payments of $6,166.67 beginning January 15, 2023, and a final principal payment of $476,000 due March 15, 2024. Am. Compl. ¶ 18. The Note further included default provisions, including a 20% post-default interest rate. Id. ¶ 19.

In early January 2023, Willoughby informed Tactical of purported problems with the December 2022 transaction, citing storage issues in Kazakhstan and disputes with a port facility. Id. ¶ 22.

On March 22, 2023, Willoughby told Tactical's counsel that unforeseen issues had arisen and advised Tactical to "be patient," adding that the originally promised return was no longer possible and that further capital might be required. Id. ¶ 23. Willoughby promised to provide documentation regarding the status of the December 2022 transaction and what had happened with Tactical's investment but allegedly failed to do so, despite Tactical's repeated requests. Id. ¶¶ 24-25.

4

Tactical alleges that, throughout the rest of 2023, Willoughby provided no further explanation or documentation concerning the $500,000 investment. Id. ¶ 26. On February 29, 2024, Tactical sent a formal notice of default to Apex and Willoughby, citing missed monthly payments under the Note. Id. ¶ 27. The notice warned that if the default was not cured by March 5, 2024, legal action would follow. Id. Neither Apex nor Willoughby responded. Id. ¶ 28.

The Note has since matured, and full payment is due, including interest and attorney's fees as provided for in the agreement. Id. ¶ 29. Willoughby, as the sole owner and operator of Apex, is alleged to have personally made false representations to induce Tactical's investment. Id. ¶¶ 30–31. Willoughby allegedly used Apex to obtain funds from investors, including Tactical, and failed to show that Tactical's investment was used for any legitimate transaction. Id. ¶ 31. Tactical alleges that Apex is now defunct, without assets or accounts, and that Willoughby should be held personally liable under veil-piercing principles for Apex's breach of the Note. Id. ¶¶ 32–33.

Tactical has brought, first, a breach of contract claim against Apex and Willoughby, and, second, a fraud claim against Willoughby. Apex has filed an Answer, and the defendants have asserted counterclaims against Tactical. ECF No. 38. Willoughby

has moved to dismiss Tactical's claims against him pursuant to Rule 12(b)(6). ECF No. 34.

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).[1] The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

### III.

### A.

Willoughby has moved to dismiss the breach of contract claim against him, arguing that he executed the Note at issue solely in his capacity as an officer of Apex, not in his personal capacity. According to Willoughby, it is well established that an officer who signs a contract on behalf of a corporation is not personally liable on the contract. See Salzman Sign Co. v. Beck, 176 N.E.2d 74, 76 (N.Y. 1961).

Tactical does not dispute that Willoughby signed the Note only in his representative capacity, nor does it claim that Willoughby is a party to the contract. Instead, Tactical proceeds on a veil-piercing theory, asserting that Willoughby so dominated and abused Apex's corporate form that he should be held personally liable for Apex's contractual obligations.

Under Delaware law, which governs the veil-piercing analysis in this case,[2] a plaintiff seeking to pierce the corporate veil must allege facts establishing two prongs: (1) that the corporation and the individual defendant operated as a single economic entity, and (2) that the corporate form was used to perpetrate fraud or injustice. See MIG Invs. LLC v. Aetrex Worldwide, Inc., 852 F. Supp. 2d 493, 514 (D. Del. 2012); Manichaean Cap., LLC v. Exela Techs., Inc., 251 A.3d 694, 714-15 (Del. Ch. 2021).[3]

### 1.

With respect to the first prong of the veil-piercing analysis, courts applying Delaware law use a seven-factor test to determine whether a corporation and its shareholders operated as a single economic entity. These factors include: "(1) gross

---

[2] The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, and therefore New York law applies to the claims in this action. See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938) (holding that federal courts sitting in diversity should apply the substantive law of the forum state); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941) (holding that federal courts sitting in diversity must apply the choice-of-law rules of the forum state). Under New York choice-of-law rules, "the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995). Because Apex is incorporated in Delaware, Delaware law governs the veil-piercing analysis in this case.

[3] In his reply brief, Willoughby argues that the New York cases cited by Tactical are inapposite, but that contention is unavailing. Because Delaware and New York courts apply materially similar standards to the veil-piercing analysis, courts routinely consult New York case law to evaluate veil-piercing claims governed by Delaware law. See, e.g., Dover Ltd. v. A.B. Watley, Inc., No. 04-cv-7366, 2006 WL 2987054, at *9 (S.D.N.Y. Oct. 18, 2006) (observing that there is "relatively little difference between the applicable standards under both states' laws" and collecting cases). Accordingly, although not controlling, the New York cases cited by Tactical are relevant to the Court's analysis.

undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) insolvency of the debtor corporations at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; (7) whether the corporation is merely a facade." MIG Invs., 852 F. Supp. 2d at 514; see also Blair v. Infineon Techs. AG, 720 F. Supp. 2d 462, 470–71 (D. Del. 2010). "While these factors are useful, any single one of them is not determinative. An ultimate decision regarding veil-piercing is largely based on some combination of these factors, in addition to an overall element of injustice or unfairness." Manichaean Cap., 251 A.3d at 706–07.[4]

In this case, Tactical has alleged facts implicating several of these factors. The Amended Complaint alleges that Willoughby is the sole owner and shareholder of Apex and that he exercised total control over Apex's operations, including the transaction with Tactical. See Am. Compl. ¶¶ 4, 31. The Amended Complaint's allegations also give rise to the inferences that: Willoughby was the only person at Apex who communicated with

---

[4] New York courts consider similar factors when determining whether to pierce the corporate veil. These factors include whether there was a failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use. Forum Ins. Co. v. Texarkoma Transp. Co., 645 N.Y.S.2d 786, 787 (App. Div. 1996). Additional factors include overlap in ownership and directorship, or common use of office space and equipment. Webmediabrands, Inc. v. Latinvision, Inc., 3 N.Y.S.3d 262, 264 (N.Y. Sup. Ct. 2014).

Tactical; Apex had no separate infrastructure, assets, or bank accounts; and Apex failed to observe any corporate formalities. See id. ¶¶ 3-4, 11, 14, 16, 20-21, 30-33. In fact, at the time of the alleged claims, Apex purportedly shared an address with Willoughby, further underscoring the absence of corporate separateness. See id. ¶¶ 3-4. Therefore, Tactical has sufficiently alleged that Apex and Willoughby acted as a single economic entity.

**2.**

As to the second prong, the plaintiff must establish that the individual defendant used the corporate form to perpetuate fraud or an injustice. See Manichaean Cap., 251 A.3d at 714-15; see also Gristede's Foods, Inc. v. Madison Cap. Holdings LLC, 105 N.Y.S.3d 426, 428 (App. Div. 2019) (observing that, under Delaware law, "piercing the corporate veil is appropriate only upon a showing of fraud or something like fraud" (emphasis omitted)). Furthermore, the fraud or injustice must consist of more than the underlying cause of action—in this case, Tactical's claimed breach of contract against Apex. TradeWinds Airlines, Inc. v. Soros, No. 08-cv-5901, 2012 WL 983575, at *6 (S.D.N.Y. Mar. 22, 2012).

The Amended Complaint's allegations support the inference that Willoughby used the corporate form of Apex to further some overall element of fraud or injustice. Tactical alleges that

10

Willoughby misrepresented the nature and operations of Apex to induce Tactical to invest $500,000, including by falsely describing Apex as a major international commodities firm with over 100 employees and global offices, when in fact it had no such operations. Am. Compl. ¶¶ 10-14, 31-32. Tactical further alleges that Willoughby invoked his affiliation with a reputable law firm to support the deception. Id. ¶¶ 9, 15. Moreover, Tactical alleges that Willoughby used the Apex entity as a vehicle to defraud Tactical and misappropriate its funds. Id. ¶ 31. Tactical also contends that Willoughby has failed to provide any evidence that the funds supplied by Tactical were used in connection with actual transactions by Apex, or to otherwise account for the funds. Id. ¶¶ 24-26. These allegations, if proven, would tend to show that Apex was merely a sham corporation used to perpetuate fraud or injustice.

Willoughby argues that Tactical has failed to allege a fraud or injustice that is distinct from the underlying claim, but Willoughby is incorrect. Tactical's allegations go beyond a mere failure to perform under the Note—the underlying breach of contract claim—and assert that Willoughby engaged in an elaborate scheme of fraud, including by fabricating Apex's business operations and legitimacy to secure Tactical's investment. In other words, Tactical has alleged that Willoughby used Apex to perpetuate fraud or unfairness—separate from the

underlying breach of contract—and therefore satisfies the second prong of the veil-piercing standard. See TradeWinds, 2012 WL 983575, at *7 (finding that the plaintiffs alleged "an element of injustice distinct from the underlying wrong which gave rise to the cause of action against [the corporate defendant]" and permitting veil piercing on a motion to dismiss).

Courts have recognized that veil-piercing claims are fact-intensive and often not suitable for resolution on a motion to dismiss. See, e.g., Nantong Sanhai Garment Co. v. Fab Mill Inc., No. 21-cv-859, 2022 WL 540756, at *2 (S.D.N.Y. Feb. 23, 2022) (denying the defendants' motion to dismiss because, in relevant part, "a more fully developed factual record is required to determine whether [the company's] corporate veil should be pierced"); City of Almaty v. Ablyazov, 278 F. Supp. 3d 776, 799 (S.D.N.Y. 2017) ("[A] veil-piercing theory often necessitates a fact laden inquiry and thus is unsuited for resolution on a pre-answer, pre-discovery motion to dismiss."). The same is true in this case. Tactical's allegations plausibly suggest that Apex was a mere shell dominated by Willoughby and used to deceive investors. Accepting these allegations as true, Tactical has stated a claim for breach of contract under a veil-piercing theory. The motion to dismiss the breach of contract claim against Willoughby is therefore **denied.**

12

**B.**

Willoughby also seeks dismissal of Tactical's fraud claim. Willoughby argues that the fraud claim is duplicative of the breach of contract claim, and that Tactical has failed to allege fraud with the particularity required under Federal Rule of Civil Procedure 9(b).

**1.**

Although New York courts have in some cases dismissed fraud claims as duplicative of breach of contract claims, a fraud claim is not duplicative of a contract claim where the alleged misrepresentations were collateral to the contract and not merely a restatement of the contractual promises allegedly broken. See, e.g., 470 4th Ave. Fee Owner, LLC v. Adam Am. LLC, 169 N.Y.S.3d 250, 252-53 (App. Div. 2022) (finding a fraud claim not duplicative where the allegations related to acts predating the contract); Wild Bunch, SA v. Vendian Ent., LLC, 256 F. Supp. 3d 497, 506 (S.D.N.Y. 2017) (sustaining fraud claims arising from alleged pre-contractual misrepresentations that were made for the purpose of inducing the plaintiff to enter into the contract because the alleged misrepresentations were "collateral" to the contract).

In this case, Tactical has stated a claim for fraud based on Willoughby's alleged pre-contractual misrepresentations, including the purported fabrication of Apex's scale, legitimacy,

13

and business operations, in order to induce Tactical to enter
into the Note. These alleged misrepresentations were collateral
to the Note and not merely a restatement of the Note's
contractual promises. See Wild Bunch, SA, 256 F. Supp. 3d at
506; Did-it.com, LLC v. Halo Grp., Inc., 102 N.Y.S.3d 687, 688
(App. Div. 2019).

Willoughby also argues that the fraud claim must be
dismissed as duplicative of the breach of contract claim because
the damages overlap. However, this contention is without merit.
Courts have made clear that an overlap in damages is not
dispositive where the plaintiff alleges a distinct legal duty or
a collateral misrepresentation. See Bridgestone/Firestone, Inc.
v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996)
(observing that, to maintain a fraud claim alongside a breach of
contract claim under New York law, "a plaintiff must either: (i)
demonstrate a legal duty separate from the duty to perform under
the contract, or (ii) demonstrate a fraudulent misrepresentation
collateral or extraneous to the contract, or (iii) seek special
damages that are caused by the misrepresentation and
unrecoverable as contract damages" (emphasis added)). Because
Willoughby's alleged misrepresentations were collateral to the
Note, Tactical's fraud claim is not duplicative of its contract
claim.

14

**2.**

Willoughby also contends that Tactical has failed to allege fraud with particularity. Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard to claims sounding in fraud. Fed. R. Civ. P. 9(b). To satisfy the heightened pleading standard under Rule 9(b), a plaintiff must identify the "who, what, when, where, and how" of the misconduct alleged. Kane ex rel. U.S. v. Healthfirst, Inc., 120 F. Supp. 3d 370, 382 (S.D.N.Y. 2015); see also Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004).

In this case, Tactical's allegations satisfy Rule 9(b). The Amended Complaint details the time, place, and content of Willoughby's alleged misrepresentations, identifies Willoughby as the individual making the misrepresentations, and describes what was obtained thereby. For example, Tactical alleges that, during a meeting on December 14, 2022, Willoughby advised that "they" (which Tactical purportedly understood to include Pomerantz) believed the potential securities litigation case did not have merit and solicited Tactical to invest in Apex instead. See Am. Compl. ¶¶ 12–13, 15. In the same meeting, Willoughby allegedly represented that Apex was a global corporation with substantial trading volume, years of expertise, and numerous employees, and showed Tactical an Apex website, which claimed that Apex was a "diversified global company with over 100

15

employees and affiliates in 12 countries" with "main business hubs in Geneva, Beijing, Shanghai, Singapore and Chicago." Id. ¶ 14. However, according to Tactical, those representations were false. According to Tactical, Apex was in fact a company with no employees or assets, and Willoughby failed to provide evidence that the funds provided by Tactical were ever used for the supposed (or any) investment. See id. ¶¶ 14, 31-32.

Accordingly, Willoughby's motion to dismiss the fraud claim is **denied.**

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, defendant Willoughby's motion to dismiss is **denied.** The Clerk is respectfully directed to close ECF No. 34.

**SO ORDERED.**

Dated:    New York, New York
          July 10, 2025

                                         _____
                                              John G. Koeltl
                                         **United States District Judge**

16